

**Thomas M. Wood, IV**
T: 410.332.8523 | F: 410.332.8564 | tmw@nqgrg.com

July 7, 2023

**VIA ECF**

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: *United States ex rel. YNKDY-2 v. Shiel Medical Laboratory, et al.*,
      Civil Action No. 16-CV-1090-NGG

Dear Judge Garaufis:

  I represent Defendants BIM Medical Inc. ("**BIM**") and Shiel Medical Laboratory ("**Shiel Lab**") in the above-referenced action. On behalf of BIM and Shiel Lab, I respectfully request a pre-motion conference and, pursuant to Rule V.A.2(a) of Your Honor's Individual Rules, submit this pre-motion letter concerning BIM's and Shiel Lab's anticipated motion to dismiss all claims asserted against them in Relator's Third Amended Complaint (the "**TAC**"). Pursuant to Individual Rule V.A.3, Defendants BIM and Shiel Lab also request an extension of time to answer, move, or file their motion to dismiss the TAC to a date to be determined at the pre-motion conference.

## Background

  **Seven years ago** – in March 2016 – Relator YNKDY-2 ("**Relator**"), filed this *qui tam* action under seal for itself and on behalf of the United States, the State of New York, and the State of New Jersey, asserting claims under the Federal False Claims Act (the "**FCA**"), 31 U.S.C. § 3729 *et seq.*, the New York State False Claims Act (the "**NYFCA**"), N.Y. Fin. Law § 187 *et seq.*, the New Jersey False Claims Act (the "**NJFCA**"), N.J. Stat. Ann. § 2A:32C–1 *et seq.*, and other laws alleging, *inter alia*, that "Defendants" knowingly submitted claims for reimbursement for laboratory tests that were not reasonable or necessary or that were furnished pursuant to improper referrals and kickbacks. ECF No. 1. On March 2, 2017, Relator filed its first Amended Complaint. ECF No. 9. On February 9, 2022, Relator filed a Second Amended Complaint (the "**SAC**"). ECF No. 22. On June 14, 2022, the federal and state governments unanimously decided to decline intervention, and the matter was unsealed. ECF Nos. 24–26. Shortly thereafter, BIM, Shiel Lab and defendant Jack Basch filed pre-motion letters (the "**First Pre-Motion Letters**") explaining numerous reasons why this Court should dismiss each and every claim in Relator's SAC. ECF Nos. 52 and 54.

  Before a pre-motion conference could be heard regarding the First Pre-Motion Letters, Relator filed the TAC on May 10, 2023. ECF No. 65. Remarkably, the TAC does not substantively change anything from the SAC. In the TAC, just like in the SAC, Relator brings the following seven claims: (1) Count I is a claim brought under §§ 3729 (a)(1) and (a)(1)(A) of the FCA for presentation of false claims; (2) Count II is a claim brought under § 3729(a)(1)(B) of the FCA for false statements material to false claims; (3) Count III is a FCA "reverse" false claim for failure to

**NEUBERGER QUINN GIELEN RUBIN GIBBER P.A.**
The Honorable Nicholas G. Garaufis
July 7, 2023
Page 2 of 9

return overpayments; (4) Count IV is a claim brought under the NYFCA for presentation of false claims, false statements material to false claims and failure to return overpayments; (5) Count V is a claim brought under the NJFCA for presentation of false claims, false statements material to false claims and failure to return overpayments; (6) Count VI is a claim brought under the FCA by Relator on behalf of non-party "John Doe" for illegal retaliation; and (7) Count VII is a claim brought under the NJ Conscientious Employee Protection Act ("**NJ CEPA**") by Relator on behalf of non-party "John Doe" for illegal retaliation.

As explained below, because the TAC is riddled with fatal flaws, dismissal of the TAC in its entirety is not only warranted, but is required as a matter of law.

**I. This Action Cannot Proceed Because Relator Is Not a Proper Party.**

In the present action, the TAC's use of a shell corporation as the Relator in a *qui tam* action in order to provide anonymity to the Anonymous Individual (aka John Doe) contravenes Rule 10(a) of the Federal Rules of Civil Procedure and the presumption of openness in judicial proceedings, and prejudices Defendants.

As a general rule, a plaintiff (or relator) cannot file or maintain complaints anonymously or under a pseudonym. To be sure, Rule 10(a) of the Federal Rules of Civil Procedure[1] provides that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Similarly, the presumption of openness in judicial proceedings requires that the parties to a lawsuit be identified. *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). This vital presumption enables "public scrutiny of judicial proceedings" and is necessary for the simple reason that the public has the "right to know who is using their courts." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008) (citation omitted). Where, as here, a judicial proceeding involves "matters of particular concern to the public, such as allegations of fraud against the government" the presumption of openness "is especially strong". *U.S. ex rel. Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 564 (E.D. Va. 2007). In very limited circumstances, courts may allow a plaintiff to file or maintain an action under a pseudonym for purposes of anonymity if "the plaintiff's interest in anonymity" outweighs "both the public interest in disclosure and any prejudice to the defendant." *Sealed Plaintiff*, 537 F.3d at 189. This balancing inquiry requires a court to consider factors such as those set forth by the Second Circuit in *Sealed Plaintiff v. Sealed Defendant*. *See* 537 F.3d at 190 (providing a non-exhaustive list of factors).

Here, Relator is a corporate shell known as "YNKDY-2" that exists for the sole purpose of asserting the claims of an unnamed individual (the "**Anonymous Individual**") who is Relator's principal and is alleged to have "held a senior position with Shiel" with "direct and personal knowledge of the matters alleged." TAC ¶¶ 10, 165-181. Even if the Anonymous Individual belatedly sought leave of court to proceed anonymously, none of the Second Circuit's factors tilt in favor of allowing the Anonymous Individual to hide behind a corporate shell to conceal his identity. First, because the present matter is a *qui tam* case alleging fraud against federal and state governments, the public interest in openness and disclosure is especially high. *See Permison*, 492 F. Supp. 2d at 564. Second, Defendants are unquestionably prejudiced by the Anonymous

---
[1] "**Rule**" is used herein to reference a Federal Rule of Civil Procedure, unless otherwise stated.

**NEUBERGER QUINN GIELEN RUBIN GIBBER P.A.**

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 3 of 9

Individual's anonymity because it hinders Defendants' ability to meaningfully respond to the TAC's allegations. Third, this case does not involve anything highly sensitive or personal, and there is nothing indicating any risk of retaliatory physical or mental harm. *See* TAC, generally. Fourth, the TAC's sole attempt to justify anonymity, *see* TAC ¶ 167, is based on alleged employment-related concerns that courts consistently find insufficient to justify anonymity in FCA actions. *See, e.g.*, *United States v. UCB, Inc.*, No. 14-CV-2218 (TPG), 2017 WL 838198, at *2 (S.D.N.Y. Mar. 3, 2017) (collecting cases). The balancing inquiry weighs heavily, if not completely, against allowing anonymity in this action.

In the TAC, the Anonymous Individual continues to refuse to identify himself and, instead, continues to improperly hide his identity behind the corporate shell known "YNKDY-2". These actions violate Rule 10(a) of the Federal Rules of Civil Procedure and the presumption of openness in judicial proceedings. Thus, this action cannot proceed. *See Publicola v. Lomenzo*, 54 F.4th 108, 114 (2d Cir. 2022) (finding that the plaintiff's failure to comply with requirements to disclose his identity justified dismissal of the action).

## II. This Court Lacks Jurisdiction over "Shiel Medical Laboratory" and All Claims Against It Under Rules 12(b)(1) and 12(b)(2).

In Counts I–VII of the TAC, Relator seeks judgment against, *inter alia*, Shiel Lab. Relator, however, fails to, and cannot, meet its burden of showing that subject matter jurisdiction and personal jurisdiction exist in the first instance. A party to an action must have the capacity to be sued. *Ragin v. Harry Macklowe Real Est. Co.*, 126 F.R.D. 475, 480 (S.D.N.Y. 1989). "[E]xistence in law must be alleged in [a] pleading[.]" *Id.* (citing *Little Shoppe Around the Corner v. Carl*, 363 N.Y.S.2d 784 (Rockland Cty. Ct. 1975)). To have the capacity to be sued, a party must be a "natural person, a corporation, a partnership, or any other legally cognizable entity." *Id.* Where a party does not have the legal capacity to be sued, any action brought against it is a nullity and cannot be maintained. *See id.* ("[N]o action can be maintained against a nullity."). "It is well settled that a trade name 'has no separate jural existence, and that it can neither sue nor be sued independently of its owner,'" *See, e.g.*, *Leser v. Karenkooper.com*, 856 N.Y.S.2d 498 (N.Y. Cty. Sup. Ct. 2008) (citation omitted). Thus, an action brought against a trade name is a non-justiciable nullity. *See Thompson v. Jamaica Hosp. Med. Ctr.*, No. 13 CIV. 1896-RWS, 2016 WL 4556905, at *5 (S.D.N.Y. Aug. 30, 2016) (noting trade names are not proper parties).

Here, Relator fails to, and cannot, sufficiently allege that Shiel Lab has the capacity to be sued. In the case caption, the TAC identifies "Shiel Medical Laboratory" as a defendant but fails to indicate in the caption whether Shiel Lab is a legal entity in the first instance, much less indicate the type of alleged legal entity. The reason for Relator's failure is simple: Relator knows that Shiel Lab is not a legal entity. To be sure, although the TAC alleges that "Defendant Shiel Medical Laboratory was a private corporation incorporated in the State of New York [] with its principal place of business in Brooklyn, New York," TAC ¶ 11 (emphasis added); *see also id.* ¶ 2, the TAC also concedes that Shiel Lab is the same entity as BIM, which is already named as a defendant in this case. *See* TAC ¶ 2 (alleging that "[i]n November 2013 Shiel became BIM Medical, Inc." (emphasis added)). Corporate records obtainable from the New York Department of State Division of Corporations ("**NYDOS-DC**"), which this Court can judicially notice, determinately show that Shiel Lab is not a corporation or legal entity capable of being sued. Specifically, NYDOC-DC

**NEUBERGER QUINN GIELEN RUBIN GIBBER** P.A.

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 4 of 9

records reveal that on November 20, 2013, a Certificate of Amendment to the Restated Certificate of Incorporation of Shiel Medical Laboratory, <u>Inc.</u> was filed with the NYDOS-DC changing the entity name from Shiel Medical Laboratory, <u>Inc.</u> to BIM Medical Inc. This entity name change occurred around the same time when Spectra Holdco, LLC ("**Spectra**") purchased Shiel Medical Laboratory, the clinical laboratory and facility at issue, from Shiel Medical Laboratory, <u>Inc.</u> *See* ECF No. 72; *see also* TAC ¶¶ 2, 11, 16-17, 166. After the sale, BIM filed a "Certificate of Assumed Name" with the NYDOS-DC and assumed the trade name of "Shiel Medical Laboratory" <u>solely</u> for funding purposes following Spectra's purchase of the laboratory facility.

To the extent Relator intended to sue Shiel Medical Laboratory, <u>Inc.</u>, the entity that owned Shiel Medical Laboratory (the clinical laboratory and facility at issue) *prior to its sale to Spectra*, Relator has done so by suing Defendant BIM. Relator cannot maintain separate claims against Shiel Lab because Shiel Lab is not a legal entity and has no separate jural existence, making any such claim a non-justiciable nullity. *See, e.g.*, *Ragin*, 126 F.R.D. at 480 ("[N]o action can be maintained against a nullity."); *Thompson*, 2016 WL 4556905, at *5–6. Accordingly, pursuant to Rule 12(b)(2), this Court must dismiss all claims against Shiel Lab for lack of personal jurisdiction. *See, e.g.*, *M.E. Aslett Corp. v. Crosfield Elecs., Inc.*, No. 86 CIV. 3549-CSH, 1987 WL 7023, at *1 (S.D.N.Y. Feb. 17, 1987) (explaining an action against a trade name is subject to dismissal for lack of personal jurisdiction because the trade name defendant "has no independent legal existence and [] lacks the capacity to be sued under New York law[.]").

Because Shiel Lab is not a legal entity and has no separate jural existence, this Court also does not have subject matter jurisdiction over the claims against Shiel Lab. The False Claims Act "subjects to liability '[a]ny <u>person</u>' who, *inter alia*, 'knowingly presents, or causes to be presented, to an officer or employee of the United States Government … a false or fraudulent claim for payment or approval.'" *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 780 (2000) (alteration in original) (emphasis added) (quoting 31 U.S.C. § 3729(a)). The term "person" does <u>not</u> include a non-legal entity such as a trade name. *Cf. id.* (citing 1 U.S.C. § 1A). Thus, this Court does not have subject matter jurisdiction over the alleged claims against Shiel Lab, and they must be dismissed pursuant to Rule 12(b)(1).

### III. This Court Lacks Jurisdiction over Counts VI and VII of the TAC Under Rule 12(b)(1).

In Counts VI and VII of the TAC, Relator, a corporation identified as YNKDY-2, attempts to bring Federal and State employment retaliation claims under the FCA and NJ CEPA on behalf of "John Doe", an anonymous individual who is not a party in this action but who is simply alleged to be "one of the principals who formed the corporate entity which is the Relator in this action." TAC ¶ 167. Relator, however, lacks standing to bring the retaliation claims. Thus, this Court should dismiss Counts VI and VII for lack of jurisdiction.

"The Art. III judicial power exists only to redress or otherwise to protect against injury *to the complaining party*." *Vermont Agency*, 529 U.S. at 771–72 (citation omitted) (emphasis in original). "An interest unrelated to injury in fact is insufficient to give a plaintiff standing[.]" *Id.* at 772–74. While the FCA provides a statutory exception to standing allowing the "United States' injury in fact [to] confer standing on [a] relator to bring [a] qui tam civil action under [the] False

**NEUBERGER QUINN GIELEN RUBIN GIBBER P.A.**
The Honorable Nicholas G. Garaufis
July 7, 2023
Page 5 of 9

Claims Act[,]" *see id.*, neither the FCA nor the NJ CEPA includes an exception to standing that would allow a corporate relator to stand in the shoes of an anonymous individual for purposes of bringing an individual's statutory employment retaliation claims. *See* 31 U.S.C. § 3730(h) (regarding Count VI); N.J.S.A. 34:19–1, *et seq.* (regarding Count VII). Thus, Relator lacks standing to bring John Doe's retaliation claims in Counts VI and VII, and this Court should dismiss those claims under Rule 12(b)(1). *See Conn. Parents Union v. Russell-Tucker*, 8 F.4th167, 172 (2d Cir. 2021) ("A district court properly dismisses an action under Fed. R. Civ. P.12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when the plaintiff lacks constitutional standing to bring the action." (internal citations and quotation marks omitted)).

### IV. Counts I–V Fail to Satisfy the Particularity Standard under Rule 9 and the Plausibility Standard under Rule 12(b)(6).

Claims alleging fraud, including those in Counts I–V of the TAC brought under the FCA and its state-based analogues, "fall within the express scope of Rule 9(b)" and, thus, are subject to its heightened pleading standard. *See Gold v. Morrison–Knudsen Co.*, 68 F.3d 1475, 1476–77 (2d Cir.1995) (citing cases); *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-0704 (ERK), 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) … also applies to *qui tam* actions under state statutes similar to the FCA." (citations omitted)). Courts in the Second Circuit "rigorously enforce[]" Rule 9(b)'s particularity standard. *U.S. ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 247 (2d Cir. 2019) (Summary Order) (citation omitted). To plead with particularity under Rule 9(b), a plaintiff is required to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* In other words, "a plaintiff [must] set forth the who, what, when, where and how of the alleged fraud." *Polansky*, 2009 WL 1456582 at *4 (citation omitted). A complaint also must plausibly state each claim and must allege sufficient facts in order to do so. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that the plausibility standard requires "a complaint [to] contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

Here, to avoid dismissal of Counts I-V under Rules 9(b) and 12(b)(6), the TAC must, *inter alia*: (i) allege fraud or a fraudulent scheme and the submission of false claims with particularity, and (ii) allege facts that plausibly state each claim. *E.g.*, *U.S. ex rel. Moore v. GlaxoSmithKline, LLC*, No. 06 CIV. 6047 BMC, 2013 WL 6085125, at *4 (E.D.N.Y. Oct. 18, 2013). The TAC fails under both standards.

#### (i) Counts I–V fail to satisfy the particularity standard under Rule 9(b).

First, the TAC fails to sufficiently allege fraud or a fraudulent scheme against BIM, Shiel Lab or any other Defendant. The vast majority of the TAC's purported factual allegations are improperly group pled, *see, e.g.*, TAC ¶¶ 77- 81, 88, 90, 96, 119-120, 122-125, 128, 131-133, 136-138, 143-146, 148-151, 156-158, 160, 161-163, 168-169, making it nearly impossible for any Defendant to know which claims are being alleged against it. Further, the TAC is unclear as to the meaning of the undefined term "Shiel", which is used throughout the TAC for several different entities as well as a clinical laboratory. *See, e.g.*, TAC ¶¶ 2-4, 6, 11-12, 13, 6, 49-50, 81-87, 92,

**NEUBERGER QUINN GIELEN RUBIN GIBBER** P.A.

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 6 of 9

96-104, 106-109, 115-118, 121, 136, 166-167. Relator's failure to allege fraudulent conduct specific to BIM, Shiel Lab or any other Defendant does not satisfy Rule 9(b)'s particularity requirement. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"). Further, the TAC does not particularly allege the date or dates when the alleged fraudulent acts or statements occurred. *See* TAC ¶¶ 77-164. In fact, the TAC is practically devoid of dates, making it a complete guessing game for BIM (Shiel Lab or any other Defendant) to try to figure out who the allegations are against, particularly in light of the fact that the laboratory facility known as Shiel Medical Laboratory was owned by different Defendants at different times, *see id.* Two of the few allegations that include a date vaguely allege that "Shiel" has submitted false claims "[s]ince at least 1996," TAC ¶ 4, and that certain alleged inducements "dated back to the mid-1990's," TAC ¶ 103.[2] A viable claim for fraud cannot rely on group pleading over such a broad time span, particularly where, as here, ownership of the laboratory business in question changed during that time span.

Second, despite the fact that "the submission of a false claim is the *sine qua non* of a False Claims Act violation," *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 253 (S.D.N.Y. 2014) (internal quotation marks and citation omitted), the TAC fails to sufficiently allege that BIM (or Shiel Lab) submitted any false claim.[3] In fact, the TAC does not allege details regarding **any** actual false claim or the submission of **any** actual false claims by **any** Defendant, much less payment of any actual false claims. *See* TAC ¶¶ 77-164. Because the TAC does not particularly allege "who" did what, when, its allegations of fraud are patently insufficient under Rule 9(b) and dismissal of Counts I-V is required for that reason alone. *See e.g., Gelbman*, 790 F. App'x at 248–49 (affirming the district court's dismissal for failure to satisfy Rule 9(b)'s particularity standard).

### (ii) Counts I–V fail to satisfy the plausibility standard under Rule 12(b)(6).

First, Relator's claims that Defendants submitted claims for tests "that were not reasonable and necessary" and that it "made, used, and caused to be made or used" false statements to get false claims paid are insufficiently pled. For example, Relator's allegations that in 2004 and 2014 one employee added tests to lab orders that were unnecessary, TAC ¶¶ 92-93, are conclusory and fail to provide substantiating facts to plausibly support the assertion. In fact, Relator's allegations that doctors, or doctors' employees or practices, ordered these tests contradict the assertion that tests were unnecessary. *See* TAC ¶ 5, 87, 93. The TAC is also devoid of allegations or facts that any codes "inserted" by "Shiel" employees were inaccurate based on any patient's reported symptoms as opposed to accurate code edits for tests based on an employee's follow-up of test orders. *See* TAC ¶¶ 77-164. Following up on orders and making such edits is not improper given that clinical laboratories are required to ensure that there is sufficient documentation in the patient's medical record to establish medical reasonableness and necessity of tests. *See* TAC ¶¶

---

[2] Notably, the majority of the claims against BIM (and Shiel Lab) are time-barred under the FCA, NJFCA and NYFCA, which have limitation periods between six to ten years, *see* 31 U.S.C. § 3731(b)(1) (6 years); N.Y. State Fin. Law § 192(1) (10 years); N.J. Stat. § 2A:32C-11(a) (6 years).

[3] While it is true that in limited circumstances a *qui tam* complaint need not allege the actual submission of false claims where the access to such information and details are uniquely within the defendants' knowledge and control, *see U.S. ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 82 (2d Cir. 2017), the TAC does not allege any facts to allow a relaxed standard here. *See Gelbman*, 790 F. App'x at 248.

**NEUBERGER QUINN GIELEN RUBIN GIBBER** P.A.

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 7 of 9

31, 60-63. Accordingly, the TAC's allegations that tests were not reasonable and necessary and that false statements were made or used "cannot plausibly suggest actionable wrongdoing" because they can be explained by lawful behavior. *Flanagan v. Bahal*, No. 12-2216 (NLH/JS), 2015 WL 9450826, at *5 (D.N.J. Dec. 22, 2015). Thus, Relator's claims regarding such tests and statements merely allege a potential opportunity for fraud, at best, which is insufficient to state a claim. *See id.*

Second, Relator's claims based on alleged violations of the federal Physician Self-Referral Law, 42 U.S.C. § 1395nn (the "**Stark Law**") should likewise be dismissed because the TAC fails to allege requisite facts. The Stark Law, which governs physician self-referrals, "prohibits physicians from referring their Medicare and Medicaid patients to business entities in which the physicians or their immediate family members have a financial interest." *U.S. ex rel. Corp. Compliance Assocs. v. N.Y. Soc. for Relief*, No. 07 CIV. 292 PKC, 2014 WL 3905742, at *10 (S.D.N.Y. Aug. 7, 2014) (internal quotation marks and citation omitted). The TAC, however, fails to identify **any** referrals that resulted from any alleged violation of the Stark Law. The TAC is devoid of any factual allegations identifying any physician (or a physician's immediate family member) who had a financial interest in any business entity in the first instance. Without these allegations, there is no basis for a claim under the Stark Law. Thus, the TAC's allegation that "Defendants knowingly compensated physicians and skilled nursing facilities in exchange for referrals, in violation of the Stark Law," TAC ¶ 120, is baseless, conclusory and patently insufficient to state any claim that relies on Stark Law violations.

Third, the FCA, the NYFCA and the NJFCA all impose liability for, *inter alia*, "knowingly" presenting or causing to be presented, a false or fraudulent claim "for payment or approval." 31 U.S.C. § 3729(a); N.Y. Fin. Law § 189(a); N.J. Stat. § 2A:32C-3. Thus, to adequately plead the scienter element of its fraud claims, Relator was required to "plead the factual basis which gives rise to a strong inference of fraudulent intent" as to each defendant. *United States v. Strock*, 982 F.3d 51, 66 (2d Cir. 2020) (citation omitted). The TAC fails in this regards. The TAC's allegations of scienter are bareboned, conclusory and fail to include any facts specific to BIM or Shiel Lab. *See, e.g.,* TAC ¶¶ 5, 119-20, 128-29, 131, 146, 158. Thus, dismissal is required.

Fourth, because Counts I, II, IV and V of the TAC fail to sufficiently allege any traditional false claim, the TAC's "reverse" false claims in Counts III-V necessarily fail. Significantly, the viability of a "reverse" false claim relies on whether a relator has plausibly alleged that the defendants caused the submission of false claims in the first instance. *See U.S. ex rel. CKD Project, LLC v. Fresenius Med. Care Holdings, Inc.*, 551 F. Supp. 3d 27, 47–48 (E.D.N.Y. 2021) (citing cases and dismissing reverse false claim where relator failed to allege a regular false claim), *aff'd*, No. 21-2117, 2022 WL 17818587 (2d Cir. Dec. 20, 2022). Where a relator fails to sufficiently allege a traditional false claim, "it cannot have alleged an obligation to pay [or refund] money to the government," thus making it impossible to sufficiently plead the necessary elements of a "reverse" false claim. *Id.* Accordingly, because the TAC's traditional false claims must be dismissed for failure to state a claim, its "reverse" false claims also must be dismissed. *See id.*

Fifth, the TAC's "reverse" false claims in Counts III-V further fail because "a reverse false claim cannot turn on the same conduct underlying a traditional false claim[]" or "mirror" a relator's

**NEUBERGER QUINN GIELEN RUBIN GIBBER** P.A.

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 8 of 9

traditional false claim. *U.S. ex rel. Foreman v. AECOM*, 19 F.4th 85, 119 (2d Cir. 2021). Here, the conclusorily alleged "overpayments" allegedly resulted from the same purported fraud underlying the claims in Counts I–II. For this additional reason, the TAC's "reverse" false claims must be dismissed.

### IV. This Court Should Dismiss Counts VI and VII as against BIM (and Shiel Lab) Under Rule 12(b)6 Because Neither Was the Employer of "John Doe" at the Time of the Alleged Retaliatory Termination.

To be liable under 31 U.S.C. § 3730(h) and N.J.S.A. 34:19–1, *et seq.*, for retaliation, a person must be the employer of the employee allegedly being retaliated against. *See Chorches*, 865 F.3d at 95 (discussing liability under 31 U.S.C. § 3730(h)); *D'Annunzio v. Prudential Ins. Co. of Am.*, 927 A.2d 113, 119 (N.J. 2007) (discussing liability under N.J.S.A. 34:19–1, *et seq.*). Assuming *arguendo* that Relator has standing to bring John Doe's retaliation claims in the first instance (which Relator does not), the TAC still has not, and cannot, sufficiently plead retaliation claims against BIM (or Shiel Lab) for the simple reason that the TAC admits that at the time of the alleged retaliatory termination, the anonymous "John Doe" was employed by Spectra Holdco, LLC (which Relator alleges "is owned and controlled by Fresenius"), not BIM (or Shiel Lab). *See* TAC ¶¶ 2, 166-167. Thus, Counts VI and VII should be dismissed as against BIM (and Shiel Lab).

### V. This Court Should Deny Any Request for Leave to Amend.

Given all of its deficiencies, including, but not limited to the reasons set forth herein, dismissal of the TAC in its entirety with prejudice is appropriate and any request for leave to amend should be denied. First, the **TAC is Relator's fourth bite at the apple** for a lawsuit that began in 2016 and was investigated by the States of New Jersey and New York, as well as the United States, all of whom declined to intervene. Second, Relator has had ample time and several opportunities to file sufficiently pleaded allegations. Nevertheless, Relator has repeatedly failed to do so. Moreover, before filing the TAC, Relator had the benefit of knowing the SAC's numerous pleading deficiencies, which were set forth in the First Pre-Motion Letters. Despite this, the TAC failed to correct **any** of those deficiencies. If Relator could have alleged facts to save its claims from dismissal, surely Relator would have done so in the TAC. Thus, further amendment is undoubtedly futile. Third, Relator should not be allowed endless opportunities to amend its allegations in an attempt to sufficiently state claims. Each amendment causes further harm to Defendants. Indeed, BIM, Shiel Lab and others have been expending time and money for **seven years** responding to investigations, gathering and producing evidence and defending themselves against Relator's **still** unsupported and insufficient allegations against them. Allowing Realtor to further amend its allegations, despite its "repeated failure to cure deficiencies by amendments previously allowed[,]" is unwarranted and unjust. Thus, any request by Relator for leave to amend should be denied. *See U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) ("Leave to amend should be freely give[n] ... when justice so requires, but should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]" (citations and internal quotation marks omitted)).

**NEUBERGER QUINN GIELEN RUBIN GIBBER P.A.**

The Honorable Nicholas G. Garaufis
July 7, 2023
Page 9 of 9

For at least the foregoing reasons, as well the reasons set forth in Fresenius Medical Care Holdings, Inc.'s and Spectra Holdco, LLC's joint June 1, 2023, letter requesting a pre-motion conference (ECF No. 72), and today's letter to the Court from counsel for Defendant Jack Basch, BIM and Shiel Lab intend to file a motion to dismiss the claims against them, with prejudice, and respectfully request that this Court: (1) schedule a pre-motion conference prior to the filing of such a motion; and (2) extend BIM's and Shiel Lab's time to file their motion to dismiss to a date to be determined at the conference.

          Respectfully submitted,

          /s/ Thomas M. Wood, IV
          Thomas M. Wood, IV

          *On behalf of Defendants Shiel Lab and BIM*

TMW/nmb

cc:    All Counsel of Record (via ECF)
        Rachel G. Balaban, Esq. (via U.S. Mail), *Counsel for the United States*
        Diana Elkind, Esq. (via U.S. Mail), *Counsel for State of New York*
        Charisse M. Penalver, Esq. (via U.S. Mail), *Counsel for State of New Jersey*