UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------------
                                                :
UNITED STATES OF AMERICA,                       :
ex rel, YNKDY-2 and James Gordon                :
                                                :
STATE OF NEW YORK,                              :        Civil Action: 16-CV-1090
ex rel, YNKDY-2, and James Gordon,              :
                                                :
STATE OF NEW JERSEY,                            :
ex rel YNKDY-2, and James Gordon                :
                                                :
              Relator,                          :
          v.                                    :
                                                :
Shiel Medical Laboratory; Shiel Holdings, LLC;  :
Fresenius Medical Care; BIM Medical, Inc.;      :
Jack Basch; Fresenius Medical Care Holdings, Inc.;:
Spectra Holdco, LLC; Does 3-10, Inclusive, et al.,:
                                                :
              Defendants.                       :
-------------------------------------------------------------------
```

# RELATOR'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' OPPOSITION TO RELATOR'S MOTION TO AMEND COMPLAINT

# TABLE OF AUTHORITIES

## CASES

*Agerbrink v. Model Service, LLC*, 155 F. Supp. 3d 448, 453-54 (S.D.N.Y. 2016)………………………. 7, 11

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)…………………11

*Bank v. Spark Energy* 2020 WL 6873436 at \*2-\*4 (E.D.N.Y 11/23/2022) ………………………………… 7

*Blagman v. Apple, Inc.*¸2014 WL 2106489 at \*3 (S.D.N.Y. 5/19/2014) …………………………………...… 11

*Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 286, 293, 304-05 (S.D.N.Y. 2013) …….... 5

*Community Assoc. Underwriters of America v. Main Line Fire Protection Corp.*, 2020 WL
        5089444 at \*4 (S.D.N.Y. 8/28/2020)……………………………………………………………… 11, 12

*Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30. 47-48 (2018)…………………………………..14

*DeLuca v. SmithKline Beecham Corp.*, No. 06-CIV-2153, 2007 WL 541656
        at \*3 n. 6 (S.D.N.Y. 2/20/2007)…………………………………………………………………………7

*Denny v. Barber*, 576 F.2d 465, 466, 471 (2nd Cir. 1978) …………………………………………………... 9

*Ferring BV v. Serenity Pharms.*, 2019 WL 117316 at \*3-\*4(S.D.N.Y 1/7/2019) …………………………... 7

*Hall v. United Techs. Corp*., 872 F Supp 1094, 1100-1102 (D. Conn. 1995) ……………………………...8, 9

*In re Eaton Vance Mut. Funds Fee Litig*., 403 F Supp. 2d 310, 311-12, 318-19 (S.D.N.Y. 2005) ……....… 7

*Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1ˢᵗ Cir. 1983) ……………………………….....… 8, 9

*Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) …………………………….…..…. 5, 11

*Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 n.5 (2nd Cir. 2009)……………………………….…..…. 6

*PI Inc. v Quality Prod., Inc.* 907 F Supp. 752, 764-65 (S.D.N.Y. 1995) ………………………………….…7

*Rivera v. New York City Hous. Auth.*, 25 A.D. 3d 450, 451 (2006) ………………………………………...10

*Ruotolo v. City of New York*, 514 3d 184, 191-92 (2nd Cir. 2008)………………………………… …..….…7

*Schnier v. New York State Thruway Auth.*, 205 A.D. 958, 959 (2022) ………………………………… … 10

*State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981) ………………………… …….…..… 5

*United States ex rel. Doe (now Waldman) v. Spectra Holdco, LLC, et al.* 17-CV-2732, E.D.N.Y,
 Dkt. 20, ¶¶ 115-117…………………………………………………………………………………... 10,11

*U.S. ex rel. Foreman v. AECOM*, 19 F. 4th 85 (2nd Cir. 2021) …………………………………………...…... 4

*U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 21, 28 (2nd Cir. 2016) ……………………………..………… 4

*U. S. ex rel. Raffington v. Bon Secours Health System, Inc.*, 567 F. Supp, 3d 429, 438 (2021) …….....……*5, 6*

*Volunteer Fire Ass'n of Tappan, Inc. v. City of Rockland*, No. 09-cv-4622, 2010 WL 4968247
 at *3-*5 (S.D.N.Y. 11/24/2010) ……………………………………………………………...… .……7

*Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) …………………………………….…..…...3

*Wilson v. Toussie*, 260 F. Supp 2d. 530, 535 (E.D.N.Y., 2003) ……………………………...………..…... 3

## STATUTES

28 U.S.C. §2071

## RULES

Fed. R. Civ. P. 12(b)(6) …………………………………………………………………….…………….. 4, 5, 6

Fed. R. Civ. P. 15(a) …………………………………………………………………………………..…….. 5, 6

*Individual Rules of Judge Nicholas G. Garaufis*, Rule V.A.2.a …………………………………………….… 8

## OTHER

1 NY Practice Guide: Business and Commercial § 1.06 (2023)

# **TABLE OF CONTENTS**

**ARGUMENT** ................................................................................................................................ 3

1.  Leave to Amend Should Not Be Denied On the Basis of Equity .................................................. 3

2.  Leave to Amend Should Not Be Denied Because of Improperly Claimed "Bad Faith ...............6

3.  Defendants Are Not Prejudiced Because They Had Ample Notice of Relator's Claims ...........10

4.  Defendants Are Incorrect – the FAC Merely Elaborates on the TAC Allegations They Complained Were Insufficient……………………………………………………………………………... 12

5.  There Is Nothing Wrong With Gordon's Wholly-Owned LLC Suint as the Relator, and No Reason to Bar Gordon's Individual Participation…………………………………………………….. 13

6.  Conclusion ………………………………………………………………………………………... 14

## ARGUMENT

1. **Leave To Amend Should Not Be Denied On The Basis Of Futility**

Relator's Fourth Amended Complaint (the "FAC"), once leave is granted, will present the first full opportunity for the Court to adjudicate this matter on the merits, as the FAC will certainly be met by Defendants' Motions to Dismiss, and enabling such merit-based adjudication is the rationale for the Second Circuit's preference for granting leave to amend over outright dismissal with prejudice. *See Williams v. Citigroup, Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011). It should not be forgotten that despite the fact the proposed FAC is the fifth iteration of Relator's complaint, it is only the first substantive departure from the uniform pleading across the previous four (culminating in the Third Amended Complaint, or "TAC"), now pled with greater specificity in an effort to correct claimed pleading deficiencies noted by Defendants in their Motions to Dismiss the TAC.

Now, in their opposition papers, all three defendants claim that amendment should be disallowed on the grounds of futility, on the basis that under *Wilson v. Toussie*, 260 F. Supp 2d. 530, 535 (E.D.N.Y., 2003), this Court should analyze futility by determining whether the FAC would withstand a Rule 12(b)(6) motion to dismiss. Shiel Medical Laboratory and BIM Medical Inc.'s Opp. at 6. *Wilson* involved a 9(b) challenge on the grounds that a proposed amended complaint alleging that a group of real estate lenders had submitted fraudulent loan documents left the defendants "clumped together in vague allegations" without ever specifying which loan documents contained fraudulent statements and which lenders had submitted them. *Id.*, at 537. This is the very weakness Relator's proposed FAC would correct. The proposed FAC adds sixteen paragraphs describing precisely which defendants submitted false claims, the time periods in which they did it, and the methods they used. It also identifies over two dozen such claims by

claim number, date, and payer.  It is almost as though Defendants' real objection is not that the FAC is vague, but that it is uncomfortably specific.

As a practical matter, Defendants' futility argument would prevent the Court from conducting the merit-based adjudication favored in this Circuit. This is in fact exactly how Defendants' salient futility case law cited in their opposition papers often plays out – an amendment correcting deficiencies is allowed, a 12 (b)(6) motion to dismiss receives full briefing and hearing, and it is only after that initial dismissal that a later motion for leave to amend is subjected to 12 (b) (6) scrutiny as a threshold matter. Defendants' authority makes our point that denying leave to amend now on futility grounds would be premature and improper.

As but one example, Defendant Basch cites three cases in his opposition papers that indicate denial of the instant motion would be procedurally incorrect. Basch Opp. at pp. 8-10. *U.S. ex. rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 21, 28 (2nd Cir. 2016) was not disposed of on futility grounds but dismissed on a 12(b)(6) motion, and only after the plaintiff had ben granted leave to amend and the 12(b)(6) motion was fully adjudicated. *Id.* at 21. In *U.S. ex. rel. Foreman v. AECOM*, 19 F. 4th 85 (2nd Cir. 2021) the district court only ruled that further amendment would be futile after the Relator had amended twice while the complaint was under seal, and then a third time via a stipulation with the defendant with the resultant leave to amend. Defendants' motion to dismiss the third amended complaint was fully adjudicated. Even then the court allowed the relator seven weeks to correct the deficiencies and move for leave to amend, which plaintiff failed to do. *Id.* at 101-103. Although plaintiff's untimely subsequent request for leave to amend was ultimately denied on futility grounds, this was only after adjudication on the merits of the prior permitted amendment and the opportunity to amend *again* after the dismissal.  The district court's careful approach starkly contrasts with the rushed process Defendants urge. The *Foreman* court's approach is far more in keeping with the permissive purpose animating Rule 15(a). *See also Chen*

*ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 286, 293, 304-05 (S.D.N.Y. 2013) (same sequence of events, amendment allowed to correct pleading deficiencies, subsequent amendment denied as "futile" only after adjudication of 12(b)(6) motion for dismiss; cited in Fresenius Medical Care Holdings and Spectra Holdco's Opp. at p. 8).

Rule 15(a), the Second Circuit's direction to lean in favor of patience and liberality, and even Defendants' own case law all militate in favor of granting Relator's motion for leave to amend so that the FAC can be adjudicated on the merits after full briefing and argument instead of the hurried minutes and compressed space allowance of a reply brief for a motion to amend. Hurried, truncated motion practice is no way to consider well-developed arguments and reach a carefully considered conclusion. The court should reject this rush to judgment.

2. **Leave to Amend Should Not Be Denied Because of Improperly Claimed "Bad Faith"**

"When a plaintiff moves for leave to amend, the non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *U. S. ex rel. Raffington v. Bon Secours Health System, Inc.*, 567 F. Supp, 3d 429, 438 (2021) (Citations and internal quotation marks omitted). "The Second Circuit has held that an amendment prejudices a non-moving party when, among other things, 'the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial [or] (ii) significantly delay the resolution of the dispute.'" *Id*., *quoting Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). "'Mere delay, absent a showing of bad faith or undue prejudice does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

Defendants claim Relator's motion for leave to amend is made in bad faith. Relator's desire to address pleading deficiencies claimed in the Defendants' motions to dismiss is no such thing.

There is no unconscionable delay. The Second Amended Complaint was only unsealed and served in 2022. The subsequent May, 2023 Third Amended Complaint was necessitated when Defendant Fresenius Medical Care's counsel refused to accept service of the Second Amended Complaint claiming the wrong party had been named. Fresenius maintained this position even though two of its most culpable executives, Phil Hayden and Barry Schwartz both had email addresses indicating they worked for Fresenius Medical Care North America (@fmcna), (Dkt. 91, ¶16(d), and even though Fresenius Medical Care issued a press release headlined "Fresenius Medical Care Closes Divestment of Shiel Medical Laboratory to Quest Diagnostics".[1]  To transform a delay caused by a defendant's obstruction into a claim that the Relator has been so dilatory that he should be accused of bad faith is remarkable display of *chutzpah*.  *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 n.5 (2nd Cir. 2009). "Normally, mere allegations that an amendment will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice.  However, the prejudice calculus changes when the motion to amend is made following the conclusion of discovery." *Raffington*, *supra*, 567 F. Supp 3d at 438 (Citations and internal quotation marks omitted). Yet *Raffington* is the very case Basch cites for his bad faith claim.  (Dkt. 103, p.4.) Once again, a defendant's reliance on caselaw seems misplaced. As discovery has not even commenced, such a hardship will not be caused by granting leave to amend.

Defendants further argue that Relator's prior knowledge of the details in the FAC that newly flesh out the allegations from the prior complaint is indicia of bad faith. The district court has furnished an answer to such an argument:

> The defendants argue that the plaintiff's delay in seek[ing ]to amend her complaint to add defendants and claims she clearly knew she wished to pursue months before is a tactic designed to burden them. This is exactly type of conclusory allegations of bad faith that courts consistently reject. See, e.g., *Blagman v. Apple, Inc.*¸2014 WL 2106489 at *3

---

[1] https://fmcna.com/company/our-company/news-releases/fresenius-medical-care-closes-divestment-of-shiel-medical-laboratory-to-quest-diagnostics/, last visited February 14, 2024

(S.D.N.Y. 5/19/2014) ("To the extent that the defendants claim that plaintiff's delay was strategic…,they provide no showing of bad faith apart from the delay itself."); *Randolph Foundation v. Duncan*, 2002 WL 32862 at \*2 (S.D.N.Y. 1/11/2002) ("The fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); *Primetime 24 Joint Venture v. DirectTV, Inc.*, 2000 WL 426396 at \*5 (S.D.N.Y. 4/20/2000)("When the opponent of an amendment asserts that the movant is acting in bad faith, there must be something more than delay or inadvertence for the court to refuse to allow the amendment.").

*Agerbrink v. Model Service, LLC*, 155 F. Supp. 3d 448, 453-54 (S.D.N.Y. 2016).

Defendants string-cite a hodge-podge of "bad faith" pleading cases that advertise their inapposite nature by describing scenarios either procedurally or substantively at odds with the instant case. *See.,* e.g.: *Ruotolo v. City of New York*, 514 3d 184, 191-92 (2nd Cir. 2008) (denial of post judgment  leave to amend on trial-ready case, proposing radically new legal theory that if granted would provoke extensive new discovery); *Ferring BV v. Serenity Pharms.*, 2019 WL 117316 at \*3-\*4(S.D.N.Y 1/7/2019) (amendment held to be bad faith delaying tactic where summary judgment was pending and a trial date looming); *Bank v. Spark Energy* 2020 WL 6873436 at \*2-\*4 (E.D.N.Y 11/23/2022) (amendment denied because of an extensive pattern and practice of unconcealed and admitted dilatory tactics from one particular attorney on a number of cases brought under the Telephone Consumer Protection Act over a period of years in multiple district courts); *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F Supp. 2d 310, 311-12, 318-19 (S.D.N.Y. 2005) (after plaintiffs ignore the opportunity to cure pleading deficiencies by amendment, case dismissed on the merits with prejudice, and post-judgment motion for leave to amend denied); *PI Inc. v Quality Prod., Inc.* 907 F Supp. 752, 764-65 (S.D.N.Y. 1995)(initial amendment permitted after filing of motion to dismiss, amended complaint subsequently briefed and argued, following oral argument on motion to dismiss leave to amend filed a second time requested adding new claims, denied); *Volunteer Fire Ass'n of Tappan, Inc. v. City of Rockland*, No. 09-cv-4622, 2010 WL 4968247 at \*3-\*5 (S.D.N.Y. 11/24/2010) (amendment filed past deadline in agreed-upon scheduling order); *DeLuca v.*

*SmithKline Beecham Corp.*, No. 06-CIV-2153, 2007 WL 541656 at \*3 n. 6 (S.D.N.Y. 2/20/2007)
(aside from untimeliness, plaintiff's motion for leave to amend merits denial because it failed to
include the proposed amended complaint and improperly sought leave to amend in her opposition to
motion to dismiss); *Hall v. United Techs. Corp*., 872 F Supp 1094, 1100-1102 (D. Conn. 1995)
(amendments permitted twice in response to motions to dismiss, the third such instance deemed
dilatory where pleading defects still remained); *Denny v. Barber*, 576 F.2d 465, 466, 471 (2nd Cir.
1978) (following grant of motion to dismiss based on pleading defects, amended complaint
dismissed because defects still present); *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 61 (1st
Cir. 1983) (first amended complaint dismissed for failure to state a claim, subsequent leave to amend
denied on the grounds that plaintiff might have been waiting to see if the court would order dismissal
before they cured defects).

Far from compelling denial of leave to amend, Defendants' authority shows why leave
should be granted here. Relator's motion to amend is not coming after discovery has closed or
summary judgment is looming, nor is it coming after multiple failed attempts to defend against 12(b)
motions or some pleading defects remained unaddressed, or a lawyer's history compels the
conclusion of bad faith.  None of that is the case here.

Finally, Defendants claim that Relator should have sought leave to amend after receiving the
Defendants' letters requesting a pre-motion conference.  Yet there is nothing in either the Local
Rules or in the Court's individual rules to suggest that the letters are (or should be) weaponized in
this fashion. "The movant shall write to the court requesting such conference, with a brief
description of the grounds for such motion. . . [T]he party that will oppose the contemplated motion
may file a brief letter setting forth its position on the issues identified in the movant's submission."
*Individual Rules of Judge Nicholas G. Garaufis*, Rule V.A.2.a.  Amendment is allowed as a matter
of course if done within 21 days of service of a motion to dismiss under Rule 12(b), (e), or (f).

9

Nothing in the Local or the Individual Rules suggests that the 21-day period may be shortened if a defendant sends a pre-motion conference letter, and even in a local rule, such a shortening would be contrary to Rule 15, and therefore contravened by Congress' limited delegation of rule-making power. (Rules prescribed by the courts "shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title."  28 U.S.C. §2071)

### 3. **Defendants Are Not Prejudiced Because They Had Ample Notice of Relator's Claims**

Defendants claim – loudly and often – that they have been prejudiced by receiving late notice of Relator's claims.  The argument fails factually and legally. As the parties claiming prejudice the defendants bear the burden of proving that the delay has prejudiced their ability to investigate or defend against the Relator's claims.  *Schnier v. New York State Thruway Auth.*, 205 A.D. 958, 959 (2022) Although Defendants have complained, they have offered no evidence that the delay has compromised their ability to identify witnesses or collect testimony.  *Matter of Rivera v. New York City Hous. Auth.*, 25 A.D. 3d 450, 451 (2006).  In this case, defendants had prior notice via the Third Amended Complaint which arises from the same facts. Notice dating back to 2022 at the *latest* means Defendants would have to prove that whatever prejudice they are claiming arises not from the six-year delay while the case was legally under seal, but by the fifteen months between the service of the TAC on August 17, 2022 (Dkt. 104, p. 2 of 10) and the filing of the (subsequently struck) FAC on November 20, 2023.  Since Defendants have declined to offer one single fact demonstrating purported prejudice, laying responsibility for that prejudice at Relator's feet will not be possible.

Further, Defendants cannot maintain the fiction that they have been surprised by any of this. They were first put on notice that their fake diagnosis scheme was exposed in September of 2016, when another Shiel sales representative, Michael Waldman, emailed the Spectra Fresenius

compliance officer, Peter Connelly, giving a detailed description of and warning against the fake

diagnostic code scheme. *U. S. ex rel. Doe (now Waldman) v. Spectra Holdco, LLC, et al.* 17-CV-

2732, E.D.N.Y, Dkt. 20, ¶¶ 115-117.  Not long after that government investigators, responding to

both of the two separate *qui tam* complaints, began making a series of very pointed document

requests and asking very targeted interview questions, at which Basch and other

BIM/Spectra/Fresenius associated witnesses were represented by Spectra's counsel.  Much of this

occurred while Basch, although he had sold Shiel, played a very active role in managing the

enterprise post-acquisition. By the time of the 2022 unsealing, these defendants were fully

informed about both Relators' charges.

When these facts are lined up against the legal standard, the Defendants' claim crumbles.

"Prejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing

is *undue* prejudice to the opposing party." *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F.

Supp. 2d 281, 299 (S.D.N.Y. 2000) (emphasis in original).  As noted, *supra*, courts analyzing

undue prejudice look to whether the new claim will cause additional expenditure of resources to

conduct discovery and prepare for trial; and whether amendment would significantly delay

resolution of the dispute. *Monahan v. N.Y.C. Dept. of Corr.*, 214 F.3d *supra*, 284. Courts also look

to the procedural posture of the case, i.e. is it the eve of trial; has discovery closed; are summary

judgment motions pending. *See Agerbrink*, *supra,* 155 F. Supp. 3d at 454. Spending additional

resources on motion practice, such as motions to dismiss the amended complaint, do not rise to the

level that justifies denying a party leave to amend. *See Community Assoc. Underwriters of

America v. Main Line Fire Protection Corp.*, 2020 WL 5089444 at *4 (S.D.N.Y. 8/28/2020)

(collecting cases).

Further, Defendants had prior notice of the FAC because it "arises from the same facts

pled" in the original complaint. *Agerbrink*, 155 F. Supp. 3d at 455.  Defendants cannot deny being

on notice and cannot deny a detailed understanding, because they moved to dismiss the claims in

Relator's TAC that are premised on the same underlying facts that form the basis of the proposed

FAC. *See Community Assoc. Underwriters*, *supra*, 2020 WL 5089444 at *4 (collecting cases).

Finally, Defendants are on notice because the documentation that supports Relator's allegations in

the FAC, especially as newly described in detail in Paragraphs 86-124 and 129-151 are derived

entirely from documents -emails, memorandum, claims documents, bills and medical records,

EOMBs,  lab requisition forms, "Missing ICD-9" sheets and the "coding cheat sheets"  – that

originated with Defendants. Granting leave to amend will cause Defendants no undue prejudice.

4. **Defendants Are Incorrect – the FAC Merely Elaborates on the TAC Allegations They Complained Were Insufficient.**

The following table shows that all of the liability theories Defendants mistakenly claim as

"new" in the proposed FAC were contained in the TAC:

| Allegation in Third Amended Complaint | Paragraphs in Proposed Fourth Amended Complaint adding additional detail to make prior allegations more definite and precise |
|---|---|
| ¶ 84 and 88: Addition of made up diagnosis codes.<br><br> ¶ 85 Pressure from Shiel executives including Jack Basch to insert made up codes, and discloses the existence of "missing code" sheets that were delivered to Shiel employees to ensure made up and unsupported codes were added.<br><br> ¶ 90 Describes "cheat sheets" that listed codes that Medicare would pay. ¶¶ 92-95 allege the addition of unnecessary tests and the incentives to reps to add these. | ¶¶ 86-121 add additional detail about the addition of made up codes and unnecessary tests, including specific details of the pressure put on employees to add the codes, the types of unsupported codes that were added and details about individual employees who participated in the fraud.<br><br>¶¶ 122-126 add additional details about the unnecessary tests that were added.<br><br>These paragraphs merely refine and expand upon the conduct alleged in the TAC. |
| ¶ 96, and ¶¶120-121:  Allege that Shiel knowingly provided financial inducements to providers and physician practices to drive referrals to Shiel. | ¶¶ 129-151 Expand on the existing kickback allegations in the TAC by providing precise details about which providers and practices were given financial inducements, the value of these inducements and clarifying that these inducements were given only to high volume practices that were lucrative to Shiel/Fresenius. |

| | |
|---|---|
| ¶¶ 84, 85, 88, 90 and 92-95 as detailed above set forth the allegations regarding addition of unsupported and unnecessary tests. | ¶¶ 83-85; 92; 102-103;105-106; 110; 114-115; and 117-121 add more detail about the addition of made up codes and unnecessary tests and individually tie these allegations to each Defendant |
| ¶ 96 and 120-121 allege knowing financial inducements to providers and physician practices to drive referrals to Shiel. | ¶¶ 132; 139;141-143; and 145 add further detail regarding the kickback scheme and tie kickback allegations to the responsible Defendant. |
| ¶¶ 136-138 allege that Defendants received and retained overpayments as a result of their fraudulent billing schemes. | ¶¶ 191-192 add details regarding each Defendant's responsibility for retaining overpayments. |
| ¶ 10 Identifies Relator as a California corporation whose principal held a senior position at Shiel and who has direct and personal knowledge of allegations.  ¶¶ 165-181 allege retaliation against Realtor's principal, named as a John Doe | ¶¶ 10; 222-238 (Counts VI and VII alleging retaliation) specifically names the individual previously identified as John Doe, the principal of the relator corporation. |

5. <u>**There is Nothing Wrong With Gordon's Wholly-Owned LLC Suing as the Relator, and No Reason to Bar Gordon's Individual Participation**</u>

After clamoring for the identity of the actual whistleblower Defendants insist that he cannot now appear in his own lawsuit and that there was some malign, even sinister motive for his concealment all this time. Both claims are wrong.  James Gordon heard firsthand Basch's contempt, even hatred for whistleblowers. (Gordon Decla. ¶¶ 4-5, Exhibit 1). He was the sole support of his wife and five children, two of whom would be in college within three years, and all of whom were headed that way. *Id.*, ¶¶6-7.  James Gordon wanted to protect and provide for his family and that is the entire sinister motive for him to create YNKDY-2 as his public face to be a whistleblower. *Id.* at 8.

Gordon owns 100% of YNKDY-2 and has complete dominion and control over the corporation. *Id.,* at ¶9. This control, of course, is the *sine qua non* of judicial findings that a corporation and the person or persons behind it may be treated as a unitary legal entity. 1 NY

Practice Guide: Business and Commercial § 1.06 (2023); *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30. 47-48 (2018).  YNKDY-2 *is* Gordon's alter ego, and adding the individual's name alongside that of his corporation does not add a new party and does not create an obscure and hypothetical "relation back" problem.

Gordon's domination and control of his LLC are sufficient for this purpose even though the normal alter-ego analysis looks for more. It is the victim of fraud who wants the corporate veil pierced, not the party *with* a corporate entity. And corporations engaged in misfeasance or malfeasance have regular business operations so one can watch an individual's control over their corporation in "real time". None of that applies in this unique situation so no analysis of what harm the corporation may or may not have caused will matter. Nor will YNKDY-2's business operations matter. There were none. It is Gordon's control that matters to establish unity.

6. **Conclusion**

There are a great many excellent reasons to consider this case on its merits – and no substantial reasons to prevent this.  We respectfully request that leave to amend be granted.

Dated:  February 14, 2024                Respectfully  Submitted,

HALLORAN SAGE, LLP

____*s/s Howard L. Pierce*_____

Howard L. Pierce
Fed Bar No. HP5655
Morris Borea
Fed Bar No. ct065598
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Telephone: 860-297-4655
Fax:(860) 548-000

pierceh@halloransage.com
borea@halloransage.com

KLEIMAN /  RAJARARM

___*s/s Mark Kleiman*_____
Mark Allen Kleiman (CSB #115919)
*(pro hac vice)*
Pooja Rajararm (CSB #241777)
*(pro hac vice)*
12121 Wilshire Boulevard
Suite 810
310-392-5455
310-306-8491 (fax)
mkleiman@quitam.org
prajaram@quitam.org

_____*s/s Steven J. Marcus*_____
Steven J. Marcus
NY Bar No. 1231307
431 W. 22nd Street
New York, NY 10011
212-989-6187
Sjmarcus3@aol.com

*Attorneys for the Relator, ex rel., YNKDY-2 and James Gordon*

## CERTIFICATE OF SERVICE

On February 14, 2024, I electronically submitted the foregoing document with the clerk of the court of the United States District Court, Eastern District of New York, using the electronic case filing  system of the court. I hereby certify that I have served all counsel of record electronically or by another means authorized by Federal Rule of Civil Procedure 5(b)(2).


_____ */s/ Howard L. Pierce* _____

Howard L. Pierce