UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,
STATE OF NEW JERSEY, and
STATE OF NEW YORK, *ex. rel. YNKDY-2*,

        Plaintiffs,

 - against -

SHIEL MEDICAL LABORATORY, *et al.*,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - X

Civil Action No. 16-CV-1090
(Garaufis, J.)

## NOTICE OF STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA IN RESPONSE TO DEFENDANT JACK BASCH'S MOTION TO DISMISS

The United States of America hereby provides notice that it is submitting a Statement of Interest pursuant to 28 U.S.C. § 517. The statement is attached hereto.

Dated: Brooklyn, New York
      June 12, 2024

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201

By: /s/ *Rachel G. Balaban*
    Rachel G. Balaban
    Assistant U.S. Attorney
    (718) 254-6028
    rachel.balaban@usdoj.gov

Jamie Ann Yavelberg
Patricia L. Hanower
Elizabeth Strawn
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch, Fraud Section
(202) 353-1283
elizabeth.strawn@usdoj.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA,
STATE OF NEW JERSEY, and
STATE OF NEW YORK, *ex. rel.* YNKDY-2,

                Plaintiffs,

  - against -

SHIEL MEDICAL LABORATORY, *et al.*,

                Defendants.
- - - - - - - - - - - - - - - - - - - X

Civil Action No. 16-CV-1090
(Garaufis, J.)

**STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA
IN RESPONSE TO DEFENDANT JACK BASCH'S MOTION TO DISMISS**

The United States of America (the "government") respectfully submits this Statement of Interest (the "Statement") in accordance with 28 U.S.C. § 517, to address one issue raised by defendant Jack Basch's Motion to Dismiss Relator's Third Amended Complaint ("Basch Motion").[1] Although the government has declined to intervene in this case, the government is the real party in interest in cases, like this one, brought pursuant to the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"). *United States ex rel. Kreindler & Kreindler v United Technologies Corp.*, 985 F.2d 1148, 1154 (2d Cir. 1993).

Because the FCA is the "government's primary litigative tool for the recovery of losses sustained as the result of fraud against the government," *Avco Corp. v. United States Dep't of Justice*, 884 F.2d 621, 622 (D.C. Cir. 1989), the government has a significant interest in how decisions by the courts, even in declined actions, may shape future enforcement of the statute.

---

[1] Although the Third Amended Complaint has been superseded by the Fourth Amended Complaint, Dkt. 111, this Statement of Interest addresses the Article II arguments raised in Basch's Motion to Dismiss Relator's Third Amended Complaint in accordance with Court's February 26, 2024, Order Dkt. 110, directing continued briefing of the pending motions.

2

Accordingly, the government respectfully submits this Statement to address one discrete legal issue raised in the Basch Motion, namely, whether the *qui tam* provisions of the FCA violate Article II of the United States Constitution.

## I. THE FALSE CLAIMS ACT *QUI TAM* PROVISIONS

Under the FCA, the Attorney General may bring a civil action to recover treble damages and civil penalties for a violation of the FCA. *See* 31 U.S.C. § 3730(a). Alternatively, a private person known as a "relator" may bring suit "for the person and for the United States Government," commonly referred to as a *qui tam* complaint. *Id*. § 3730(b)(1). The United States may intervene and take over a relator's action, *id*. § 3730(b)(4)(A), or decline to intervene, in which case the relator shall have the right to conduct the action. *Id*. § 3730(b)(4)(B). If relator's action results in a financial recovery, the relator receives a share. 31 U.S.C. § 3730(d).[2]

A relator proceeding after the government declines to intervene is neither the government nor its legal representative, and does not appear on behalf of the United States or make legal or factual representations on behalf of the United States. *See, e.g.*, *United States ex rel. Fair Lab. Practices Associates v. Quest Diagnostics*, 743 F.3d 154, 166 (2nd Cir. 2013) (noting a relator "acts neither as the real party in interest nor in a representative capacity.") A *qui tam* relator is a "private part[y]" seeking to vindicate his independent interest, which arises by virtue of the

---

[2] This basic structure of the *qui tam* mechanism was put in place in the 1863 enactment of the FCA and followed a "long tradition of [such] actions in England and the American Colonies." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 774 (2000). In *Stevens*, the Supreme Court reviewed that long tradition and the "considerable number" of statutes with *qui tam* provisions passed by the First Congress and found that historical evidence "well nigh conclusive" in establishing that *qui tam* relators have Article III standing. *Stevens*, 529 U.S. at 774-77. It is similarly persuasive in establishing that the *qui tam* provisions do not violate Article II.

3

statute's "partial assignment of the Government's damages claim" to him. *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-774 (2000).

The government retains considerable control over *qui tam* suits the Attorney General has declined to take over. *See Kreindler & Kreindler*, 985 F.2d at 1155. For example, the government is entitled to ongoing information about such cases, can limit discovery to avoid interference with a government investigation or prosecution, and can pursue alternate remedies against the defendant. 31 U.S.C. § 3730(c)(3)-(5). The government can veto a relator's proposed dismissal or settlement of an action or even dismiss or settle the action over the relator's objection. *Id.* § 3730(b)(1), (c)(2)(A), (B); *see, e.g.*, *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 143 S. Ct. 1720, 1735 (2023) (holding the government may dismiss a *qui tam* action over the relator's objection, so long as it intervenes first.)

In *Polansky*, three justices expressed their view that, in an appropriate case, the United States Supreme Court should consider whether the *qui tam* provision of the FCA violates Article II. *Id.* at 1737-1743 (Thomas, J., dissenting; Kavanaugh, J., concurring with Barrett, J., joining). Since then, FCA defendants around the country have asserted such Article II challenges but—as of the date of this filing—all courts have rejected them. This Court should too.

## II.  THE *QUI TAM* PROVISIONS OF THE FALSE CLAIMS ACT ARE CONSTITUTIONAL

The Basch Motion posits in conclusory fashion that the *qui tam* provision of the FCA violates the Appointments and Take Care Clauses of Article II because *qui tam* relators "are not officers, are not appointed, and are not accountable . . . ." Basch Motion at 42.[3] The

---

[3] Basch misconstrues the government's declination as a determination that the government "has *no interest* in pursuing the alleged FCA violation." *Id.* (emphasis added). Even where the United States declines to intervene in a *qui tam* action, it nevertheless remains the real party in interest, *see, e.g.*, *Kreindler & Kreindler*, 985 F.2d at 1154. That the

Appointments Clause specifies the permissible means of appointing "Officers of the United States" to public offices "established by Law." U.S. Const. art. II, § 2, cl. 2. The Take Care Clause states that the President "shall take Care that the laws be faithfully executed." U.S. Const. art. II, § 3. The FCA's *qui tam* provisions violate neither clause.[4]

### A. The *Qui Tam* Provisions Are Consistent With The Appointments Clause.

The Appointments Clause specifies the permissible means of appointing "Officers of the United States" to public offices "established by Law." U.S. Const. art. II, § 2, cl. 2. Every court of appeals to address the argument that the *qui tam* provisions violate the Appointments Clause has rejected it. *See United States ex rel. Stone v. Rockwell Int'l Corp.,* 282 F.3d 787, 804-05 (10th Cir. 2002); *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 757-58 (5th Cir. 2001) (en banc); *United States ex rel. Taxpayers Against Fraud v. Gen. Elec. Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 757-59 (9th Cir. 1993); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1312 (11th Cir. 2021) (relying

---

government declined to intervene in this matter proves only that the government declined to intervene in this matter, nothing more. This Court should not consider the government's declination decision as having any bearing on the merits of the case.

[4] As an initial matter, the Basch Motion purports to adopt the Article II arguments asserted by an unrelated defendant in an unrelated action pending in the Northern District of Alabama. Basch Motion at 42 n.29. Such wholesale incorporation by reference violates Local Civil Rule 7.1(a)(2), which requires Basch to set forth the cases and authorities he relies upon for support so that all requirements for motion papers are in one place. Local Civ. R. 7.1(a)(2), Committee Note. The Court should decline the invitation to consider the *Exactech* brief as Basch's own. *See, e.g., Bahl v. N.Y. Coll. of Osteopathic Med. Of N.Y. Inst. of Tech.*, No. 14-cv-4020 2016 WL 10566628 (E.D.N.Y. Mar 22, 2016) (denying dismissal motion papers incorporating by reference arguments incorporated by reference from previous motion papers filed in the same civil action.) In any event, that court has now rejected those arguments, *United States ex rel. Wallace v. Exactech, Inc.*, No. 7:18-cv-01010-LSC, 2023 WL 8027309 (N.D. Ala. Nov. 20, 2023), and this Court should do the same.

on the rationale of this authority in a case where Article II arguments were not presented). Those decisions are correct.

In *Stevens*, the Supreme Court held that *qui tam* relators have Article III standing to pursue actions under the FCA. *See Stevens*, 529 U.S. at 771-78. The Court did not decide whether the Act's *qui tam* provisions comport with the Appointments Clause, *see id.* at 778 n.8, but the Court's analysis rejects Basch's Appointments Clause challenge. In holding that the FCA's *qui tam* provisions are consistent with Article III, the Supreme Court in *Stevens* expressly declined to rely on a theory that a private relator sues as an "agent of the United States." *Id.* at 772. The Court instead observed that the relator's statutory entitlement to a share of any ultimate recovery gives him a concrete personal stake in the disposition of the suit, *id.*, and concluded, "[t]he FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim . . . ." *Id.* at 765-66. After addressing standing, the *Stevens* Court held that the FCA does not authorize relators to pursue *qui tam* actions against States because, among other things, actions pursued by relators are "private suit[s]" brought by "private parties." *Id.* at 780-81 n.9, 786 n.17. The core premise of Basch's Appointments Clause challenge—that the FCA's *qui tam* provisions allow private citizens to litigate "on the government's behalf and purportedly to vindicate the public interest in FCA violations," *see* Basch Motion at 42—is antithetical to the *Stevens* Court's emphasis on the relator's personal, private stake in the litigation and its rejection of the notion that relators are "agents" of the government.

Seven years before the *Stevens* decision, the Second Circuit applied similar reasoning to conclude that *qui tam* relators have Article III standing in *Kreindler & Kreindler*. 985 F.2d at 1153-55 (holding relators have standing but affirming dismissal of *qui tam* complaint for lack of jurisdiction under 31 U.S.C. § 3730(e)(4).) *Kreindler & Kreindler* addressed neither the

6

Appointments Clause nor the Take Care Clause, but its observation that "the FCA *qui tam* provisions do not usurp the executive branch's litigation function because the statute gives the executive branch substantial control over the litigation," *Kreindler & Kreindler*, 985 F.2d at 1155, applies equally to the instant Article II challenge.

In addition to the guidance that *Stevens* and *Kreindler & Kreindler* provide, *qui tam* relators do not possess the practical indicia to qualify as federal officers subject to the Appointments Clause. The concept of an "office" "embraces the ideas of tenure, duration, emolument, and duties." *United States v. Hartwell*, 73 U.S. 385, 393 (1867); *see United States v. Germaine*, 99 U.S. 508, 511-12 (1878) (surgeon did not hold an office where he was "only to act when called on by the Commissioner of Pensions in some special case"). An office is also not personal; rather, its "duties continue, though the person be changed." *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823) (No. 15-747) (Marshall, C.J.). Here, the role of relators is limited in time and scope, confined to a particular case, and fundamentally personal in nature, stemming from their capacity as a plaintiff pursuing what is in essence a partially-assigned claim. *See Lucia v. SEC*, 585 U.S. 237, 245 (2018) ("[A]n individual must occupy a 'continuing' position established by law to qualify as an officer.") (citing *Germaine*, 99 U.S. at 511). In addition, "[r]elators are not entitled to the benefits of officeholders, such as drawing a government salary." *Stone*, 282 F.3d at 805; *see Riley*, 252 F.3d at 757-58 (noting that relators "are not subject to either the benefits or the requirements associated with offices of the United States"). Neither a relator nor their attorney in conducting *qui tam* litigation has any duty to subordinate the relator's interest to that of the government if a conflict between those interests arises. Rather, the task of representing the United States in FCA litigation is entrusted to the Department of Justice – where it remains even in declined cases – which can and does contest

legal and factual representations made by relators in *qui tam* actions. Moreover, although a statutory designation is not dispositive of the constitutional question, *cf. Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 392-93 (1995); *Mistretta v. United States*, 488 U.S. 361, 393 (1989), it is notable that the FCA does not purport to "establish[] by Law" an "Office[]" of informer or relator, U.S. Const. art. II, § 2, cl. 2. Nor does the Act otherwise express an intent that relators should be treated as federal officers. To the contrary, the FCA provision that authorizes *qui tam* suits is entitled "ACTIONS BY PRIVATE PERSONS." 31 U.S.C. § 3730(b).

Basch's reliance on *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) and *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020), is misplaced. In *Buckley,* the Court held that "any appointee exercising significant authority pursuant to the laws of the United States is an 'Officer of the United States,' and must, therefore, be appointed in the manner prescribed by §2, cl.2, of [Article II]." *Buckley*, 424 U.S. at 126. The appointees with "significant authority" in *Buckley* were members of a federal commission with primary responsibility for conducting civil litigation, rule-making authority, and the power to determine eligibility for funds and federal elective office. *Id* at 140. Similarly, the appointee in *Seila Law LLC* was the sole director of a bureau with "extensive rulemaking, enforcement, and adjudicatory powers, including the authority to conduct investigations, issue subpoenas and civil investigative demands, initiate administrative adjudications, prosecute civil actions in federal court, and issue binding decisions in administrative proceedings." *Seila Law LLC*, 591 U.S. at 197.

By contrast, *qui tam* relators are not appointees or even agents of the United States. *Stevens*, 529 U.S. at 772. Nor do relators bear "significant authority" on behalf of the United States; rather, they are merely "private parties" pursuing civil litigation in their own personal interest. *Stevens*, 529 U.S. at 786 n.17; *see Taxpayers Against Fraud*, 41 F.3d at 1041. After

8

declination, the Department of Justice continues to represent the interests of the United States and retains the rights and authorities of the primary party in interest, including the right to limit discovery, pursue alternate remedies, veto a relator's proposed dismissal or settlement and even compromise relator's action through settlement or dismiss the suit over the relator's objection. S*ee, e.g., Polansky*, 143 S. Ct. at 1735 (2023); *Kreindler & Kreindler*, 985 F.2d at 1155. Indeed, every court to address the argument that the *qui tam* provisions of the FCA violate the Appointments Clause has rejected it. *See, e.g.*, *Wallace,* No. 7:18-cv-01010-LSC, slip op at 5 ("Because relators are not officers, the FCA does not violate the Appointments Clause of Article II.").

### B. The *Qui Tam* Provisions Are Consistent With The Take Care Clause.

For similar reasons, the *qui tam* provisions of the FCA are also consistent with the constitutional separation of powers, including the Take Care Clause, which states that the President "shall take Care that the laws be faithfully executed." U.S. Const. art. II, § 3. In assessing whether legislation "disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions." *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 443 (1977). Regardless of whether the United States intervenes in a given suit, relators' conduct of *qui tam* litigation does not prevent the President from carrying out his constitutional functions—a point on which courts have long agreed. *See Stone*, 282 F.3d at 805-07; *Riley*, 252 F.3d at 752-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 749-57. Rather than intruding on Executive Branch powers to enforce the FCA, the *qui tam* provisions "augment[] executive enforcement of fraud cases." *Kreindler & Kreindler,* 985 F.2d at 1154-55.

As explained in Part (II)(A) above, a *qui tam* relator is a private litigant whose Article III standing is based on his independent stake: he has a "concrete *private* interest in the outcome of the suit" that arises from Congress's "partial assignment of the Government's damages claim" to him. *Stevens*, 529 U.S. at 772-73 (emphasis added). As with the Appointments Clause, the fact that a relator's suit may also vindicate a federal interest in remedying and deterring fraud on the United States does not change the analysis. As the *en banc* Fifth Circuit explained when it rejected a separation-of-powers challenge to the *qui tam* provisions, the Take Care Clause "does not require Congress to prescribe litigation by the Executive as the *exclusive* means of enforcing federal law." *Riley*, 252 F.3d at 753. Instead, as the Sixth Circuit noted, "[o]ur current statutory framework includes many laws that authorize individuals to act as 'private attorneys-general,' bringing causes of action for the common weal," *Taxpayers Against Fraud*, 41 F.3d at 1041, such as Title VII and the Sherman Act.

And, again, courts have also correctly recognized that historical evidence helps establish that the *qui tam* provisions are consistent with the constitutional separation of powers. *See, e.g.*, *Riley*, 252 F.3d at 752-53. "Statutes providing for actions by a common informer, who himself had no interest whatever in the controversy other than that given by statute, have been in existence for hundreds of years in England, and in this country ever since the foundation of our government." *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n.4 (1943); *see also Stevens*, 529 U.S. at 774-77.

Courts rejecting separation-of-powers challenges to the *qui tam* provisions have also recognized that the United States retains significant control over *qui tam* suits, regardless of whether it intervenes. *See Kreindler & Kreindler*, 985 F.2d at 1155; *Riley*, 252 F.3d at 753-57; *Taxpayers Against Fraud*, 41 F.3d at 1041; *Kelly*, 9 F.3d at 753-55; *cf. Yates*, 21 F.4th at 1312.

10

All those control mechanisms have been fully available here—the United States has received pleadings in this case, has monitored the litigation, is filing this statement of interest, is available to engage in settlement discussions, and could, upon a showing of good cause, move to intervene, settle, or dismiss this case if it chose to do so. Because the government retains that control, the FCA does not violate the Take Care Clause. *See Wallace,* No. 7:18-cv-01010-LSC, slip op at 6 (concluding that the President is able to perform his constitutionally assigned duty under the Take Care clause because of the limits the FCA places on relators.) (citing *Taxpayers Against Fraud*, 41 F.3d at 1041.)

Therefore, should this Court reach this question, it should find that the *qui tam* provisions of the FCA do not violate the Appointments Clause or the Take Care Clause.

Dated: Brooklyn, New York
      June 12, 2024

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East, 7th Fl.
Brooklyn, New York 11201

By: /s/ *Rachel G. Balaban*
Rachel G. Balaban
Assistant U.S. Attorney
(718) 254-6028
rachel.balaban@usdoj.gov

Jamie Ann Yavelberg
Patricia L. Hanower
Elizabeth Strawn
Trial Attorney
U.S. Department of Justice, Civil Division
Commercial Litigation Branch, Fraud Section
(202) 353-1283
elizabeth.strawn@usdoj.gov

11